UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

**FILED**

JUN 0 8 2006

CLERK

| | | |
|---|---|---|
| **RUDOLPH HEYD,** | ) | File No. 06-*3018* |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| **PENN TREATY NETWORK** | ) | |
| **AMERICA INSURANCE COMPANY,** | ) | |
| **PENN TREATY AMERICAN** | ) | |
| **CORPORATION, AMERICAN** | ) | |
| **NETWORK INSURANCE** | ) | |
| **COMPANY, AND AMERICAN** | ) | |
| **INDEPENDENT NETWORK** | ) | |
| **INSURANCE COMPANY OF NEW** | ) | |
| **YORK** | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the plaintiff, by and through his attorney Mike Abourezk, and for his cause of action states as follows:

## THE PARTIES

1.      Plaintiff Rudolph Heyd was born March 12, 1914, is currently 92 years old, and is a resident of the Senior Citizen's Home in Hosmer, which is located in Edmunds County, South Dakota.

2.      Defendant Penn Treaty Network America Insurance Company (PTNA) is a corporation with its principal place of business at Allentown, Pennsylvania.

3.      Defendant Penn Treaty American Corporation (PTAC) is a corporation with its principal place of business at Allentown, Pennsylvania, and in fact has the same

physical address as Defendant PTNA.

4.     Defendant American Network Insurance Company (ANIC) is a corporation with its principal place of business at Allentown, Pennsylvania, and has the same physical address as Defendant PTNA.

5.     Defendant American Independent Network Insurance Company of New York (AINIC) is a corporation with its principal place of business at Allentown, Pennsylvania, and has the same physical address as Defendant PTNA.

6.     All of the Defendants are related corporations in that PTAC is the parent and the others are subsidiaries.

7.     PTAC provides long term care (nursing home) insurance through its subsidiaries, the other named defendants.

## JURISDICTION OF THE COURT

8.     The amount in controversy in this case exceeds the amount of $75,000.

9.     Jurisdiction of the court arises pursuant to 28 U.S.C. § 1332, diversity of citizenship.

## STATEMENT OF FACTS

10.     PTNA issued a policy of long term care insurance to Rudolph Heyd, Policy #N608214, effective March 11, 1999.

11.     The policy provided for payment of $60.00 per day for life, should Rudolph become "eligible" under the contract terms, and require nursing home or assisted living care.

12.     According to the contract, eligibility for benefits under the contract of

2

insurance is triggered under any one of 3 different circumstances:

       a.)    Medical necessity as determined by the policyholder's own treating physician; OR

       b.)    Inability to perform activities of daily living; OR

       c.)    cognitive impairment.

13.    In 2002, Rudolph Heyd's treating physician determined that it was medically necessary for Rudolph to have long term care, and Rudolph began living at the Hosmer Senior Citizen's Center.

14.    After the contractually required waiting period of 100 days, PTNA conceded eligibility, and commenced paying the scheduled policy benefits of $60 per day.

15.    In 2005, PTAC, parent corporation of PTNA, announced inability to timely file its annual report due to the fact that revisions were needed to its statement of reserves for long term care policies, because many policyholders were living longer than the company had originally assumed would be the case.

16.    According to PTAC, the original reserves were set based on the assumption that most policyholders who filed a claim and obtained long term care, would not be "on the claim" more than three years.

17.    By the end of 2005, Rudolph Heyd had been in the Hosmer Senior Citizen's Center and receiving benefits for over three years.

18.    In letters dated February 3 and February 7, 2006, PTNA, ANIC and AINIC issued  letters stating that Rudolph no longer met the minimum eligibility requirements for coverage, and that the companies were terminating his benefits, effective December 5, 2005.  Defendants also resumed billing Rudolph Heyd for premiums, in breach of the

policy terms which provide for a waiver of premiums when the elimination period has been met and benefits have been paid.

19.    Dr. Susan Ostrowski, who has been Mr. Heyd's family physician since 1988, again certified in several letters that Mr. Heyd is suffering from cognitive impairments that affect his ability to safely live alone. She also reiterated that it is medically necessary that he receive intermediate nursing home care.

20.    The Defendants ignored this information, and refused to reverse termination of benefits.

21.    Rudolph's adult children, Judith Kelle and Jerome Heyd, hold co-power of attorney over Rudolph's affairs. They contacted the South Dakota Division of Insurance. The Division obtained information from Defendants about termination of the claim, and reviewed the defendant's termination of benefits as well as the insurance contract and pertinent correspondence.

22.    On April 17, 2006,. Kelle and Heyd wrote Defendants and requested information about the termination of Rudolph's benefits, and requested copies of the documents upon which Defendants based this action. The Defendants ignored these requests and did not respond.

23.    In a letter to PTNA dated May 1, 2006, the South Dakota Division of Insurance advised PTNA that under the contract terms and facts present here, as well as other complaints received about the handling of similar claims, "the South Dakota Division of Insurance is concerned that Penn Treaty may be wrongfully denying legitimate claims .. .... in violation of A.R.S.D. 20:06:21:02 and S.D.C.L. § 58-33-67."

24.    Defendants still refused to reinstate benefits.

4

25. Judith Kelle and Jerome Heyd, with POA and on behalf of their father, followed the terms of the policy and on February 18, 2006, filed an appeal with the Defendants regarding the Defendants' decision to terminate benefits. The policy states that decisions on appeals shall be provided by the company within 30 days. The company has not responded.

26.     Upon Plaintiff's information and belief, the Defendants have undertaken a policy and practice of attempting to eliminate nursing home residents from coverage in order to improve the company's financial position.

## COUNT I – BREACH OF CONTRACT

27.     Plaintiff re-alleges Paragraphs 1 through 26 above, and incorporates the same as though set forth at length.

28.     That by its actions, Defendants have breached the contract of insurance issued to Rudolph Heyd.

29.     As a proximate result of that breach, the Plaintiff has been damaged in the amount of $60 per day since payments were discontinued, which have not been paid since December 5, 2005, and continue today at the rate of $60 per day.  He has also lost the use of his money and is being required to replace the insurance payments with his own funds in order to remain in the nursing home.

30.     Plaintiff has also been damaged by being required to resume making premium payments on the policy of long term care insurance, in order to maintain his coverage, whereas  the contract says these premiums will be waived for an eligible nursing home resident.

31.     Plaintiff has also been damaged in having to incur expenses in order to

5

prosecute this breach of contract action.

32.     As a further proximate result of this conduct, Plaintiff's previous estate planning efforts to provide long term care for himself have been rendered ineffective.

## COUNT II – BAD FAITH

33.     Plaintiff re-alleges Paragraphs 1 through 32 above, and incorporates the same as though set forth at length.

34.     There is no reasonable basis for the denial or termination of Rudolph Heyd's insurance benefits.

35.     Defendants either knew or should have known of the lack of reasonable basis for termination of benefits.

36.     Defendants have proceeded to terminate policy benefits in this case in violation of the covenant of good faith and fair dealing, and are acting in bad faith.

37.     Defendants have also failed to give equal consideration to the interests of their policyholder, have ignored facts that support the claim, and have ignored law that requires payment of the claim.

38.     As a proximate result of this conduct, Rudolph has experienced financial loss and emotional distress.

39.     As a further proximate result of this conduct, Plaintiff's previous financial and estate planning efforts to provide retirement care have been disrupted.

## PUNITIVE DAMAGES

40.     Plaintiff re-alleges Paragraphs 1 through 39 above, and incorporates the same as though set forth at length.

41.   Defendants have acted with malice, oppression, and reckless disregard of the rights of Rudolph Heyd.

42.   Punitive damages are appropriate in this case in order to punish and deter the Defendants from continuing in this course of conduct.

## JOINT LIABILITY OF DEFENDANTS

43.   Plaintiff realleges Paragraphs 1 through 42 above, and incorporates the same as though set forth at length.

44.   The subsidiary Defendants are the alter egos or instrumentalities of PTAC.

45.   Upon information and belief, each of the defendants participated in the termination of Rudolph Heyd's benefits.

46.   Upon information and belief, PTAC and the other defendants also aided and abetted in the denial of Rudolph Heyd's benefits, by giving active assistance or encouragement, which led to those actions.

**WHEREFORE**, Plaintiff asks for judgment on all claims in such amounts as determined appropriate, along with prejudgment interest, costs, and all other such relief as deemed appropriate and just under the circumstances.

### TRIAL BY JURY IS REQUESTED.

Dated this 7 of June, 2006.

By: _____

Mike Abourezk
ABOUREZK LAW FIRM
Attorneys for Plaintiff
PO Box 9460
2020 W. Omaha
Rapid City, South Dakota 57709
(605) 342-0097

7